**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ERLINDA MONCADA,**

    Plaintiff,

v.                                       Case No:

**OCWEN LOAN SERVICING, LLC**,

    Defendant.              **DEMAND FOR JURY TRIAL**
_____/

**PLAINTIFF'S COMPLAINT**
**WITH INJUNCTIVE RELIEF SOUGHT**

**COMES NOW**, Plaintiff, **ERLINDA MONCADA** ("Ms. Moncada" or "Plaintiff"), by and through the undersigned counsel, and hereby sues and files this Complaint and Demand for Jury Trial with Injunctive Relief Sought against Defendant, **OCWEN LOAN SERVICING, LLC** ("Defendant"), and in support thereof states as follows:

*Introduction*

1. This action arises out of a "Debt" or "Consumer Debt" as defined by Fla. Stat. § 559.55 (6) and Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.* ("FDCPA"), the Restrictions on Use of Telephone Equipment, 47 U.S.C. § 227 *et. seq.* ("TCPA"), and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.72 *et. seq.* ("FCCPA"), in attempting to collect such debt that was discharged in bankruptcy by mailing collection letters directly to Ms. Moncada and by placing phone calls to Ms. Moncada's cellular telephone using an automatic

telephone dialing system or artificial voice or prerecorded message after Ms. Moncada revoked consent for Defendant to do place such calls.

## *Jurisdiction and Venue*

2. This Court has subject matter jurisdiction over the instant case under 28 U.S.C. §1331.

3. Jurisdiction of this Court also arises under 15 U.S.C. § 1692k(d) and Fla. Stat. § 559.77(1).

4. Jurisdiction of this Court also arises under Fed. R. Civ. P. 4(k)(1) and Fla. Stat. § 48.193(1)(a), as Defendant operates, conducts, engages in, or carries on business or has an office or agency within the state of Florida.

5. Venue lies in this District pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## *Parties*

6. Plaintiff, Ms. Moncada, was and is a natural person and, at all times material hereto, is an adult, a resident of Hillsborough County, Florida, a "consumer" as defined by 15 U.S.C. § 1692a(3), and a "debtor" or "consumer" as defined by Fla. Stat. § 559.55(8).

7. Ms. Moncada is the regular user and subscriber of the cellular telephone number 813-***-3070 ("Cellular Telephone"), and thereby is the "called party" as referenced in the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).

8. At all times material hereto, Defendant was and is a foreign limited liability corporation with its principle place of business in the State of Delaware and its

registered agent, CORPORATION SERVICE COMPANY, located at 1201 Hays Street, Tallahassee, FL 32301.

### *Statements of Fact*

9. On or around May of 2006, Ms. Moncada executed a promissory note ("Note") and mortgage ("Mortgage") that was secured by real property located at 512 Swan Range Road, Orange City, Florida 32763 ("Property").

10. Sometime thereafter, Ms. Moncada fell behind on her monthly installment payments towards the Mortgage and incurred an outstanding balance owed thereunder ("Debt").

11. On or around September 2, 2007, Ms. Moncada's account fell into default.

12. On or around October 13, 2009, Ms. Moncada filed for Chapter 7 bankruptcy relief in the United States Bankruptcy Court for the Middle District of Florida ("Bankruptcy Case"). *See* M.D. Fla. Case No: 8:09-bk-23159-KRM**.**

13. Ms. Moncada included the Property and all mortgage investor interests ("Mortgage Owners") relevant thereto in the Bankruptcy Case.

14. On or around March 19, 2010, the Court entered an order granting Ms. Moncada a discharge in the Bankruptcy Case ("Discharge Order"). *See* **Exhibit A**.

15. The Discharge Order terminated any rights that the Mortgage Owners and any purported assignee of the Mortgage thereafter, including Defendant, had against Ms. Moncada with respect to the underlying Mortgage debt ("Debt").

16. The relevant Mortgage servicer at the time of the Discharge Order, American Home Mortgage, Inc., received notice of the Discharge Order. *See* **Exhibit A, p. 3**.

17. At no time has the Debt been declared to be non-dischargeable in bankruptcy.

18. At no time has Ms. Moncada reaffirmed the subject Debt.

19. On or around November 30, 2009, the Court entered an Order Lifting the Automatic Stay regarding the Property "for the <u>sole purpose</u> of allowing the Secured Creditor to pursue its lawful *in rem* remedies as to the property described above and said creditor <u>shall neither seek nor obtain</u> an *in personam* judgment against [Ms. Moncada]. (emphasis added)." *See* **Exhibit B.**

20. The Mortgage Owners thereafter transferred, assigned, and/or sold the Debt and/or the servicing rights of the Mortgage to Defendant.

21. Part and parcel of Defendant being servicer for the Mortgage includes the responsibility to attempt to collect the Debt.

22. At all times relevant, Defendant had actual knowledge the Ms. Moncada was the debtor in a Chapter 7 Bankruptcy Case, that she was granted the discharge in that case, and that she was subsequently protected from any direct or indirect collection acts whatsoever by virtue of the injunction provided under applicable Bankruptcy law, specifically 11 U.S.C. § 524.

23. Defendant had actual knowledge of the fact that the Debt had been discharged in Ms. Moncada's Bankruptcy Case because Defendant, as servicer, had access to all records of the Mortgage Owners concerning the subject account, including but not limited to the records of the Bankruptcy Case, and all papers that were transferred to Defendant at the time of the acquisition of the Mortgage from the Mortgage Owners.

24. Under information and belief, Defendant had actual knowledge of the fact that the Debt had been discharged in Ms. Moncada's Bankruptcy Case because the Mortgage Owners advised Defendant of this circumstance upon Defendant becoming servicer.

25. As servicer for the Debt, Defendant is an agent of the current mortgage owner in regards to the Debt and had actual knowledge that the Debt was discharged in Ms. Moncada's Bankruptcy Case.

26. Despite having actual knowledge of the Discharge Order, in or around late 2015, Defendant began calling Ms. Moncada's Cellular Telephone in connection with collection of the discharged Debt.

27. Ms. Moncada answered at least one of Defendant's phone calls to Ms. Moncada's Cellular Telephone Number and demanded that Defendant stop calling.

28. During that same phone call, Ms. Moncada told Defendant that the Mortgage was discharged in the Bankruptcy Case.

29. Upon answering the call, Ms. Moncada heard a pause before she was connected to a live representative of Defendant.

30. In response, Defendant told Ms. Moncada that it required proof of the Bankruptcy Case or the calls would continue.

31. Despite Ms. Moncada's demand that Defendant stop calling her Cellular Telephone and Defendant's knowledge of the Discharge Order, Defendant continued to call Ms. Moncada's Cellular Telephone multiple times per week.

32. Defendant called Ms. Moncada's Cellular Telephone at least one hundred (100) times between late 2015 and January 2017.

33. Defendant would place calls to Ms. Moncada's Cellular Telephone while she was at work, disrupting her job and hindering her work performance.

34. All of Defendant's calls to Ms. Moncada's Cellular Telephone were placed in an attempt to collect the Debt.

35. Ms. Moncada has been harassed by each of Defendant's calls due to the frequency and timing of the calls.

36. Defendant, as assignee of the Debt after the Discharge Order was entered, thereby never had Ms. Moncada's prior express consent to call her Cellular Telephone by the use of an automatic telephone dialing system ("ATDS") or artificial voice or prerecorded message.

37. After the phone calls ended in January 2017, Ms. Moncada thought Defendant's illegal collection activity in connection with the discharged Debt had ceased.

38. However, Ms. Moncada was wrong; Defendant began sending collection letters directly to Ms. Moncada in attempts to collect the discharged Debt.

39. On October 9, 2017, Defendant sent a collection letter directly to Ms. Moncada stating that, "IMMEDIATE ACTION IS REQUIRED IF PROOF OF EXISTING COVERAGE CAN BE SHOWN" and demanding that Ms. Moncada purchase hazard insurance or else Defendant will purchase its own insurance and cost Ms. Moncada $2,382.00 annually ("Collection Letter 1"). *See* **Exhibit C.**

40. Collection Letter 1 was individually addressed to Ms. Moncada, listed the Property address, and states that, "[t]his communication is from a debt collector attempting to

collect a debt; any information obtained will be used for that purpose." *See* **Exhibit C.**

41. On or around October 17, 2017, Defendant sent another collection letter directly to Ms. Moncada in connection with the collection of the discharged Debt ("Collection Letter 2"). *See* **Exhibit D.**

42. Collection Letter 2 was individually addressed to Ms. Moncada, listed the Property address, a reinstatement amount of $66,148.31, a Due Date of "Due Now," a total amount due of $286,496.11, and past due fees/other charges of $11,442.16. *See* **Exhibit D.**

43. On or around November 1, 2016, Defendant sent another collection letter directly to Ms. Moncada in connection with the collection of the discharged Debt ("Collection Letter 3"). *See* **Exhibit E**.

44. Collection Letter 3 was individually addressed to Ms. Moncada, listed the Property address, included a total owed of $113,546.93, a statement that Ms. Moncada is 3349 days delinquent, and that "[f]ailure to bring your loan current may result in fees and foreclosure – the loss of your home." *See* **Exhibit E**.

45. Collection Letter 3 also states that, "[t]his communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose." *See* **Exhibit E.**

46. Collection Letters 1-3 (collectively "Collection Letters") were all sent in connection with the collection of the discharged Debt.

47. Defendant continues to send Ms. Moncada collection letters in an attempt to collect the discharged Debt to date.

### *Count 1: Violation of the Telephone Consumer Protection Act ("TCPA")*

48. Ms. Moncada re-alleges paragraphs 1-47 and incorporates the same herein by reference.

49. The Restrictions on Use of Telephone Equipment provision, 47 U.S.C. § 227 (b) (1) prohibits any person

> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial prerecorded voice – (iii) to any telephone number assigned to a paging service, cellular telephone service, . . . or any service for which the called party is charged for the call.

50. Defendant, as assignee of the Debt after the Discharge Order was entered, thereby never had Ms. Moncada's prior express consent to call her Cellular Telephone by the use of an an automatic telephone dialing system ("ATDS") or artificial voice or prerecorded message because the Discharge Order expressly revoked any prior express consent for Defendant to call Ms. Moncada's Cellular Telephone.

51. Ms. Moncada also expressly revoked consent to have Defendant call her Cellular Telephone by the use of ATDS or artificial voice or prerecorded message in or around late 2015 when Ms. Moncada expressly told Defendant to stop calling Ms. Moncada's Cellular Telephone and told Defendant the Debt was discharged in the Bankruptcy Case.

52. Despite never having Ms. Moncada's prior express consent to call her Cellular Telephone by the use of an ATDS or artificial voice or prerecorded message, and Ms. Moncada's additional revocation of consent, Defendant called Ms. Moncada's Cellular Telephone at least one hundred times.

53. Defendant did not place any emergency calls to Ms. Moncada's Cellular Telephone.

54. Defendant willfully and knowingly placed non-emergency calls to Ms. Moncada's Cellular Telephone.

55. Ms. Moncada knew that Defendant called Ms. Moncada's Cellular Telephone using an ATDS because she heard a pause when she answered at least one of the first few calls from Defendant on her cellular telephone before a live representative of Defendant came on the line.

56. Ms. Moncada knew that Defendant called Ms. Moncada's Cellular Telephone using a prerecorded voice because Defendant left Ms. Moncada at least one voicemail using a prerecorded voice.

57. Defendant used an ATDS when it placed at least one call to Ms. Moncada's Cellular Telephone.

58. Under information and belief, Defendant used an ATDS when it placed at least twenty calls to Ms. Moncada's Cellular Telephone.

59. Under information and belief, Defendant used an ATDS when it placed at least fifty calls to Ms. Moncada's Cellular Telephone.

60. Under information and belief, Defendant used an ATDS when it placed all calls to Ms. Moncada's Cellular Telephone.

61. At least one call that Defendant placed to Ms. Moncada's Cellular Telephone was made using a telephone dialing system that has the capacity to store telephone numbers to be called.

62. At least one call that Defendant placed to Ms. Moncada's Cellular Telephone was made using a telephone dialing system that has the capacity to produce telephone numbers to be called without human intervention.

63. At least one call that Defendant placed to Ms. Moncada's Cellular Telephone was made using a telephone dialing system that uses a random number generator.

64. At least one call that Defendant placed to Ms. Moncada's Cellular Telephone was made using a telephone dialing system that uses a sequential number generator.

65. At least one call that Defendant placed to Ms. Moncada's Cellular Telephone was made using a prerecorded voice.

66. Defendant has recorded at least one conversation with Ms. Moncada.

67. Defendant has recorded more than one conversation with Ms. Moncada.

68. Defendant has corporate policies and procedures in place that permit it to use an ATDS or artificial voice or prerecorded message to place call individuals to collect alleged debts from said individuals, such as Ms. Moncada, for its financial gain.

69. Defendant has corporate policies and procedures in place that permit it to use an ATDS or artificial voice or prerecorded message, and to place calls to individuals using such devices, just as it did to Ms. Moncada's Cellular Telephone, with no way for the called party and recipient of the calls to permit, elect, or invoke the removal of

the called party and recipient of the calls' cellular telephone number from Defendant's call list.

70. The structure of Defendant's corporate policies and/or procedures permits the continuation of calls to individuals like Ms. Moncada, despite individuals like Ms. Moncada revoking any consent that Defendant believes it may have to place such calls.

71. Defendant knowingly employs methods and has corporate policies and procedures that do not permit the cessation or suppression of calls placed using an ATDS to individual's cellular telephones, like the calls that it placed to Ms. Moncada's Cellular Telephone.

72. Defendant's phone calls harmed Ms. Moncada by trespassing upon and interfering with Ms. Moncada's rights and interests in her Cellular Telephone line.

73. Defendant's phone calls harmed Ms. Moncada by harming her reputation.

74. Defendant's phone calls harmed Ms. Moncada by causing her embarrassment.

75. Defendant's phone calls harmed Ms. Moncada by invading her privacy.

76. Defendant's phone calls harmed Ms. Moncada by being a nuisance and causing her aggravation.

77. Defendant's phone calls harmed Ms. Moncada by causing her emotional distress.

78. Defendant's phone calls harmed Ms. Moncada by causing her to lose sleep.

79. Defendant's phone calls harmed Ms. Moncada by causing a risk of personal injury to Ms. Moncada due to interruption and distraction.

80. All conditions precedent to this action have occurred.

**WHEREFORE,** Plaintiff respectfully requests this Court to enter a judgment against Defendant as follows:

   a. Awarding statutory damages as provided by 47 U.S.C. § 227 (b) (3) (B), which allows for $500 in damages for each such violation;

   b. Awarding treble damages pursuant to 47 U.S.C. § 227(b)(3)(C);

   c. Awarding Plaintiff costs;

   d. Ordering an injunction preventing further wrongful contact by the Defendant; and

   e. Any other and further relief as this Court deems equitable.

### *Count 2: Violation of the Fair Debt Collection Practices Act ("FDCPA")*

81. Ms. Moncada re-alleges paragraphs 1-47 and incorporates the same herein by reference.

82. Ms. Moncada is a "consumer" within the meaning of the FDCPA.

83. The subject debt is a "consumer debt" within the meaning of the FDCPA.

84. Defendant is a "Debt Collector" within the meaning of the FDCPA.

85. Defendant violated the FDCPA. Defendant's violations include, but are not limited to, the following:

   a. Defendant violated 15 U.S.C. §1692d(5) by causing Ms. Moncada's Cellular Telephone to ring continuously with the intent to annoy, abuse, and harass her when Defendant knew that the Debt had been discharged pursuant to the Discharge Order and by

      continuing to place calls to Ms. Moncada's Cellular Telephone after she demanded that such calls stop.

  b. Defendant violated 15 U.S.C. § 1692e(2)(A) by falsely representing the legal status of the Debt as owed by Ms. Moncada and that the Debt was collectible in its Collection Letters and by its collection calls to Ms. Moncada's Cellular Telephone when Defendant knew the Debt was not owed by Ms. Moncada nor collectible because it had been discharged pursuant to the Discharge Order.

  c. Defendant violated 15 U.S.C. § 1692e (10) by misrepresenting that the Debt was owed by Ms. Moncada and that the Debt was collectible in its Collection Letters and collection calls to Ms. Moncada's Cellular Telephone in attempts to collect the Debt, which deceived Ms. Moncada into believing that she owed the Debt despite its discharge pursuant to the Discharge Order.

  d. Defendant violated 15 U.S.C. § 1692f(1) by attempting to collect the Debt pursuant to its Collection Letters and collection calls to Ms. Moncada's Cellular Telephone when that Defendant knew that it was not permitted by law to collect the Debt after it was discharged pursuant to the Discharge Order.

86. As a result of the above violations of the FDCPA, Ms. Moncada has been subjected to illegal collection activities for which she has been damaged.

87. Defendant's actions have harmed Ms. Moncada by causing her stress because its phone calls were and continue to be placed in an attempt to collect the Debt that Ms. Moncada no longer owes by virtue of the Discharge Order.

88. Defendant's actions have harmed Ms. Moncada by causing her stress because its Collection Letters were sent in an attempt to collect the Debt that Ms. Moncada no longer owes by virtue of the Discharge Order.

89. Defendant's actions have harmed Ms. Moncada by violating her individual right to not owe the Debt by virtue of the Discharge Order.

90. Defendant's actions have harmed Ms. Moncada by violating her statutory right to not receive deceitful information from Defendant in an attempt to collect an uncollectible Debt.

91. Defendant's actions have harmed Ms. Moncada by violating her statutory right to not receive misrepresentations as to the legal status of the Debt from Defendant.

92. Defendant's actions have harmed Ms. Moncada by violating her statutory right to not be contacted about a Debt that was discharged by the Discharge Order.

93. Defendant's actions have harmed Ms. Moncada by harming her reputation.

94. Defendant's actions have harmed Ms. Moncada by causing her embarrassment.

95. Defendant's actions have harmed Ms. Moncada by invading her privacy.

96. Defendant's actions have harmed Ms. Moncada by being a nuisance and causing her aggravation.

97. Defendant's actions have harmed Ms. Moncada by causing her emotional distress.

98. Defendant's actions have harmed Ms. Moncada by causing her to lose sleep.

99. It has been necessary for Ms. Moncada to retain the undersigned counsel to prosecute the instant action, for which she is obligated to pay a reasonable attorney's fee.

100. All conditions precedent to this action have occurred.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter a judgment against Defendant as follows:

    a. Awarding statutory damages as provided by 15 U.S.C. 1692k(a)(2)(A);

    b. Awarding actual damages;

    c. Awarding costs and attorneys' fees; and

    d. Any other and further relief as this Court deems equitable.

### *Count 3: Violation of the Florida Consumer Collection Practices Act ("FCCPA")*

101. Ms. Moncada re-alleges paragraphs 1-47 and incorporates the same herein by reference.

102. Defendant violated the FCCPA. Defendant's violations include, but are not limited to, the following:

    a. Defendant violated Fla. Stat. § 559.72(7), by causing Ms. Moncada's Cellular Telephone to ring continuously with the intent to annoy, abuse, and harass Ms. Moncada and by continuing to place calls to Ms. Moncada's Cellular Telephone despite Ms. Moncada's demand that Defendant cease its calls to her Cellular Telephone, and by sending the Collection Letters to Ms. Moncada, actions which can reasonably be

      expected to annoy, abuse, and harass Ms. Moncada when Defendant knew the Debt had been discharged pursuant to the Discharge Order.

   b. Defendant violated Fla. Stat. § 559(9) by claiming and attempting to enforce the Debt by sending the Collection Letters and by placing collection calls to Ms. Moncada's Cellular Telephone when Defendant knew that the Debt was uncollectible because it had been discharged pursuant to the Discharge Order.

103. As a result of the above violations of the FCCPA, Ms. Moncada has been subjected to unwarranted and illegal collection activities and harassment for which she has been damaged.

104. Defendant's actions have harmed Ms. Moncada by harming her reputation.

105. Defendant's actions have harmed Ms. Moncada by causing her embarrassment.

106. Defendant's actions have harmed Ms. Moncada by invading her privacy.

107. Defendant's actions have harmed Ms. Moncada by being a nuisance and causing her aggravation.

108. Defendant's actions have harmed Ms. Moncada by causing her emotional distress.

109. Defendant's actions have harmed Ms. Moncada by causing her to lose sleep.

110. It has been necessary for Ms. Moncada to retain the undersigned counsel to prosecute the instant action, for which he is obligated to pay a reasonable attorney's fee.

111. All conditions precedent to this action have occurred.

Plaintiff's Complaint and Demand for Jury Trial with Injunctive Relief Sought
*Moncada v. Ocwen Loan Servicing, LLC*
Page **16** of **17**

**WHEREFORE**, Plaintiff respectfully requests this Court to enter a judgment against Defendant as follows:

    a. Awarding statutory damages as provided by §559.77, Fla. Stat.;

    b. Awarding actual damages;

    c. Awarding punitive damages;

    d. Awarding costs and attorneys' fees;

    e. Ordering an injunction preventing further wrongful contact by the Defendant; and

    f. Any other and further relief as this Court deems equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff, **ERLINDA MONCADA**, demands a trial by jury on all issues so triable.

Respectfully submitted this **December 27, 2017**,

*/s/ Michael A. Ziegler*
Michael A. Ziegler, Esq.
Florida Bar No. 74864
mike@zieglerlawoffice.com

*/s/ Kaelyn Steinkraus*
Kaelyn Steinkraus, Esq.
Florida Bar No. 125132
kaelyn@zieglerlawoffice.com

Law Office of Michael A. Ziegler, P.L.
13575 58th Street North, Suite 129
Clearwater, FL 33760
(p) (727) 538-4188
(f) (727) 362-4778
*Attorneys and Trial Counsel for Plaintiff*